CITY OF ST. LOUIS, Respondent, v. THEODORE STERNBERG, Appellant.

### November 13, 1877.

1. The Board of Freeholders, in making the provisions as to the taxing power of the city contained in the Charter of the city of St. Louis adopted in 1876, do not exceed the powers given them by the Constitution of 1875.

2. A moderate tax upon all lawyers practicing their profession in the city of St. Louis is not in violation of any provision of the Constitution of 1875.

3. A provision of a city ordinance which makes the non-payment of a tax imposed by ordinance upon a lawyer for practising his profession a criminal or quasi-criminal offence, the punishment for which is by a fine, which may be followed by imprisonment, is void.

APPEAL from St. Louis Court of Criminal Correction.
*Reversed, and defendant discharged.*

McGINNIS & SEARLE, for appellant: Municipal corporations cannot impose taxes unless authorized by the Legislature. — Const. 1875, art. 10, secs. 1, 10; Dill. on Mun. Corp., secs. 605, 606; Cooley's Const. Lim. 517, 518. The power cannot be inferred. — *Ruggles v. Collier*, 43 Mo. 375; *City of St. Louis v. Clemens*, 43 Mo. 404; *Hitch-*

cock v. *City of St. Louis*, 49 Mo. 488 ; *City of St. Louis* v. *Laughlin*, 49 Mo. 559. Equality and uniformity in taxation. — *Simmons* v. *The State*, 12 Mo. 174 ; Cooley's Const. Lim. 495–499. Payment of taxes cannot be enforced by fine and imprisonment. — *Ould* v. *The City*, 23 Gratt. 464 ; Butler's App. 73 Penn. 452. " The privilege of the lawyer secures to him an absolute vested right to practise law during good behavior." — Lawyers' Tax Cases, 8 Heisk. 634 ; *Ex parte* Garland, 4 Wall. 333 ; 41 Mo. 338 ; 22 N. Y. 81.

Leverett Bell and Samuel Erskine, for respondent, cited : *Goldthwaite* v. *Montgomery*, 50 Ala. 486 ; *Stewart* v. *Poth*, 49 Miss. 749 ; *Mayor* v. *Hynes*, 53 Ga. 616 ; *Ould* v. *Richmond*, 23 Gratt. 464 ; *Youngblood* v. *Sexton*, 32 Mich. 406.

Bakewell, J., delivered the opinion of the court.

The city of St. Louis, on September 7, 1877, passed an ordinance, in the following words :

" Sec. 1. No person shall exercise, within the city of St. Louis, the business or profession of a lawyer, without a license therefor as hereinafter provided.

" Sec. 2. A lawyer, within the purview of this ordinance, is a person who is put in the place, stead, or turn of another, to manage his matters of law, or whose office is to appear for parties to actions and other judicial proceedings, and to prosecute and defend them in their behalf, and whose authority is derived either from a formal warrant of attorney or a mere oral retainer.

" Sec. 3. Every lawyer, before entering upon or continuing the business or practice of his profession in the city of St. Louis, shall obtain from the collector an annual license therefor, for which he shall pay to the collector, in advance, the sum of twenty-five dollars.

" Sec. 4. Any person who violates any of the provisions of this ordinance shall be deemed guilty of a misdemeanor,

and on conviction shall be fined not less than twenty-five nor more than fifty dollars for each offence.''

The defendant was charged with a violation of this ordinance, by practising his profession as a lawyer in the city of St. Louis without having paid his license. He was found guilty and a fine imposed, and he appeals to this court. The facts in the case are agreed upon.

It is contended by appellant that the license provided for in this ordinance is for the sole purpose of raising revenue; is, therefore, a tax; and that the ordinance is void because the city of St. Louis, under its present Charter, does not possess the taxing power.

The Constitution of 1875, by a special provision, authorized the election of a board of freeholders of the city or county of St. Louis, who were to reorganize the government of the city by framing a charter in harmony with and subject to the laws of Missouri, to contain certain specific provisions; the charter thus framed to become the organic law of the city, and to supersede the then existing charter in sixty days after its ratification by a vote of the people. The freeholders met and performed the duties imposed upon them; and the new Charter has been adopted according to law. It gives express power to the mayor and Assembly, by ordinance not inconsistent with the Constitution or any law of the State, to assess, levy, and collect all taxes for general and special purposes, on real and personal property, and licenses, and also to license, tax, and regulate lawyers.

The power to levy taxes was contained in the Charter of St. Louis abrogated by the adoption of the existing law, and has been contained in every charter ever granted to the city. The Constitution of 1875 (art. 10, sec. 10) provides that the General Assembly shall not impose any taxes upon any cities for municipal purposes, but may, by general law, vest in the corporate authorities thereof the power to do so. The Constitution also provides (art. 9, sec. 7) that the General Assembly shall provide, by general laws, for the

organization of towns and their classification into four classes, the power of each to be defined by general laws, so that all of the same class shall have the same powers; and the General Assembly is to make provisions, by general law, whereby any city, town, or village existing may elect to be governed by such general laws. Section 16 of the same article provides a means by which any city of a population of 100,000 may frame a charter through a board of freeholders. Under these provisions of the Constitution, and for the purpose of carrying them into effect, an act of the General Assembly was passed at its last session (Acts 1877, p. 48) providing for incorporating cities of the first class, and which prescribes a mode in which any such city may become incorporate, and gives full corporate powers to all such cities, including the power of taxation, in terms as provided in the Charter of the city of St. Louis. No legislative provision giving any power of taxation to the city of St. Louis has been made, or, so far as we can see, can be made, under the Constitution, unless the city of St. Louis, renouncing its present Charter, should become a municipal corporation under the act just referred to, as a city of the first class. Are we, then, to suppose that St. Louis alone, of all cities and towns of Missouri, has, under the Charter granted to it by a special constitutional provision, no power of taxation, and that this was the intention of the framers of the Constitution of 1875? The proposition needs only to be stated. It refutes itself. Such a charter would not comply with the 20th and 23d sections of the 9th article, since it would not be in harmony with the laws of the State concerning the incorporation of other cities.

It is true that municipal corporations can levy no taxes, general or special, unless the power be unmistakably conferred. But this need not mean that it must be specifically granted in set terms. It is a question of intention. It is held, to be sure, in the interpretation of legislative enactments, that the power to tax cannot be inferred from gen-

eral clauses in a municipal charter.    But such rulings have
nothing whatever to do with the case before us.    The
power to tax is explicitly given in the Charter of the city,
adopted under the constitutional provision cited above;
and in view of that provision, and the other provisions of
the Constitution on the subject of municipal corporations,
there can be no doubt that it was the intent and meaning
of the framers of the Constitution of the State that the
charter to be framed by the Board of Freeholders for the
city of St. Louis should contain such provisions in regard
to taxation as should be found by them expedient, and as
should violate no constitutional provision.    To hold other-
wise is to hold that the framers of the Constitution offered
to St. Louis a charter under which she could have no reve-
nue, and consequently no police, no water-works, no street
lighting or paving, no means of subsistence, and no life.
In our opinion, the framers of the Constitution, by the
provisions concerning the framing of a new charter for the
city of St. Louis, intended to delegate, and did delegate,
to the city of St. Louis the power to exercise, by such
charter as it should adopt under these provisions, and by
amendments thereto, as full taxing power as it could
exercise, subject to the provisions of the Constitution on
the subject of taxation, or as could be exercised by any
other city in the State.

The power of the State to tax all professions is unques-
tioned.    This has been settled in Missouri.    That the State
may tax lawyers, and may delegate to a municipal corpora-
tion the power to tax them, was decided in 1848, in the case
of *Simmons* v. *The State*, 12 Mo. 268 ; and was reasserted in
1872, in *City of St. Louis* v. *Laughlin*, 49 Mo. 561.    We
must hold that this power has been fully delegated to the
city of St. Louis by the Constitutional Convention of 1875,
unless we are to maintain that the city has no taxing power
at all, which seems to be absurd.    The provision of the
Constitution (art. 10, sec. 1) that the taxing power may

be exercised by municipal corporations, under powers to be granted them by the General Assembly, is not to be interpreted as a declaration that St. Louis — which by this same Constitution was given full power to make a charter for itself, containing such provisions as have been customary in municipal charters, and as are not inconsistent with the Constitution itself, and as are well known to be necessary for the organization and maintenance of a city government — either shall have no taxing power whatever, or shall obtain that power only by surrendering its new Charter on its adoption, and organizing as a city of the first class under the provisions of the Constitution, and such acts of the Legislature as might be thereafter passed to carry these provisions into effect. But if, as is contended by appellant's counsel, the section referred to was intended to apply to St. Louis, and as a declaration that the taxing power could not be exercised by that city after the adoption of the new Charter, until express power should be given by the General Assembly, these absurd consequences would follow. It is manifest, therefore, that it was the intention of the framers of the new Constitution to except St. Louis from the general provisions of that instrument, in regard to the formation of new municipal corporations after its adoption. Section 25 of the same article gives to the General Assembly the same power over the city and county of St. Louis that it has over other cities and counties of the State ; but we see no conflict between this section and section 20, which makes special provision for a mode of providing a new charter for this particular city by the action of such citizens of the State as reside within a certain designated territorial limit. The power of the Legislature over the city is in nowise abridged by the fact that to the latter has been granted, by an exceptional provision, a charter giving it the power of taxation for municipal purposes ; and a comparison of the new Charter of St. Louis with the general law of the State shows that St. Louis has substantially the same power

of taxation as other towns in Missouri, and no more than may be exercised by every city of the State, of the first class, under the existing municipal corporation law, and that its charter is, in this respect, in harmony with the laws of Missouri.

It is urged that this tax is invalid because not levied on any principle of equality or uniformity. The Constitution of Missouri provides (art. 10, sec. 3) that " taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." The Constitutions of many of the States contain provisions enforcing this principle. In Texas, California, Louisiana, and Virginia it is provided that the taxation shall be " equal and uniform throughout the State;" and the same principle, with varying phraseology, is embodied in the organic laws of Massachusetts, Wisconsin, Ohio, Arkansas, Illinois, and Tennessee. These provisions are held to apply to property alone, and not to include taxation on privileges or occupations. Burroughs on Tax., sec. 54, and cases cited in note. And it seems to be quite well settled that the usual provisions in the Constitutions of the different States, concerning taxation, do not prohibit the Legislature from imposing, or authorizing municipal authority to impose, taxes upon trades, special professions, and occupations. Dill. on Mun. Corp., sec. 632, and cases cited. The uniformity required in Missouri does not seem to be in any way violated by an equal tax upon all members of one profession in one city. But in other States, where the phraseology of the Constitution is perhaps less favorable to such a tax as this, the objection has been made to similar taxation in many instances, and the courts have held it to be without force To use the language of the learned author of the well-known treatise on Constitutional Limitations, delivering the opinion of the court in *Youngblood* v. *Sexton*, 32 Mich. 414, " it may possibly be true that an apportionment according to the business done would have been more just,

but a question of this kind concerns the Legislature, and not us. Courts cannot annul tax laws because of their operating unequally and unjustly. If they could, they might defeat all taxation whatever ; for there never yet was a tax law that was not more or less unequal in its practical workings." * * * ' " The objection is presented to the wrong tribunal. The question whether a tax is just and equal or not is not a question of law. And this will meet any objection to the law based upon the fact that other kinds of business are not similarly taxed. Apportionment of taxation is purely a legislative function." These views are upheld by adjudications in Pennsylvania, Massachusetts, Vermont, Illinois, and Connecticut, referred to by Judge Cooley in the case just cited.

It is, however, urged that the power to tax is the power to destroy ; that attorneys are officers of the courts, and essential to the administration of justice ; that to the courts alone has been committed the power to admit and to disbar attorneys ; that, if the Legislature can tax attorneys, it may impose a tax which may make the existence of the profession an impossibility ; and that thus the legislative department of the government may, to the destruction of free government, invade the province of the judiciary. But the possibility of its abuse is no good argument against the existence of the power. It is in the power of the Legislature to put a stop to the administration of justice by refusing the appropriations necessary to carry on the business of the courts, or by reducing the salaries of judges to a pittance so meagre that no competent lawyer could be found to accept the position. The possibility of the abuse suggested is so remote as not to deserve consideration. When the taxing power is abused by the Legislature, for the manifest purpose of confiscating private property, or destroying an independent and coördinate branch of the government, it will be for the courts to deal with such complications as may then present themselves. Meanwhile, a

moderate tax upon the profession of the law cannot be regarded as a legislative attack upon the judiciary; and taxes upon lawyers, as such, imposed by municipal corporations, are upheld in Ohio (*The State* v. *Gazlay*, 5 Ohio, 20), Mississippi (*Stewart* v. *Potts*, 49 Miss. 749), Alabama *Goldthwaite* v. *City Council of Montgomery*, 50 Ala. 486), Georgia (*Mayor*, etc., v. *Hines*, 53 Ga. 616), and Virginia (*Ould* v. *Richmond*, 23 Gratt. 464). With the exception of the first cited, these are all very recent cases, and they have all been decided after careful consideration of the constitutional questions involved. In Tennessee, the question of the right to impose a tax upon lawyers is considered at great length in *The Lawyers' Tax Cases*, reported in 8 Heiskell, 565. The briefs of counsel and opinions of the judges in those cases occupy a very considerable portion of that volume of Tennessee Reports. The result is that, whilst a majority of the court held the act taxing the privilege of practising law to be unconstitutional, the judges filed separate opinions: two holding the right to practise law not subject to taxation; two holding that, though the Legislature may tax the privilege of a lawyer, the act before them was unconstitutional because it required a new license to be taken out by the practitioner; and two holding the act constitutional and valid. The weight of authority would seem to be altogether in favor of the views expressed by our own Supreme Court, that a license to practise law is not a contract investing the person to whom it is granted with rights with which the General Assembly cannot interfere; that the State may impose such conditions upon its exercise as are demanded by the public interest; and that a tax upon lawyers is not retrospective, and not necessarily unjust, or oppressive, or unconstitutional.

But whilst we admit the right of the Legislature to tax lawyers, the right to regulate them, except through the courts of which they are members, is a wholly different question, into which it is not necessary to enter for the pur-

poses of this case.    But a license such as is imposed by the ordinance before us is purely a tax.    The practice of law is not *malum in se*, a necessary evil, which the State finds itself incapable of wholly suppressing, but which it desires to mitigate by restrictive enactments.    The enactment before us is not intended to protect society from lawyers ; and bears no indication on its face of any attempt to regulate the business of practising law, or of any present necessity for so doing.    The license is manifestly a mere tax, and the failure to pay it does not necessarily involve any moral delinquency.    Its payment might be enforced by sale of the delinquent's property, but is no element of offence or misdemeanor.    Evil intent is an essential ingredient of crime.    The penalties imposed by section 4 cannot be sustained by authority, nor, we think, by sound reason.    The ordinance does not provide for the collection of this tax by judgment, execution, levy, and sale.    But, without any effort to collect the license fee, the city declares the attorney who cannot or will not pay, a criminal, and attempts to subject him to shameful and degrading punishment.    This provision of the ordinance we hold to be wholly unwarranted by any authority to tax lawyers given by the City Charter. It is not an attempt to regulate them ; and, if it were, the question (which we do not propose now to consider) would arise, how far it is competent for the Municipal ·Assembly to do any thing of the sort.    There is no precedent for such a proceeding as the one before us, imprisonment for debt being unknown to our laws (*Butler's Appeal*, 73 Pa. St. 448), and we hold the conviction to be clearly illegal.

The judgment of the Court of Criminal Correction is, therefore, reversed, and the defendant discharged.    All the judges concur.