## DAVIS v. OGDEN CITY et al.

No. 7241. Decided February 25, 1950. (215 P. 2d 616.)

Rehearing Denied October 24, 1950 (for Opinion, see 117 Utah ..., 223 P. 2d 412.)

See 53 C. J. S., Licenses, sec. 10. Municipal admission to bar, regulation of. See note, 144 A. L. R. 150. See, also, 5 Am. Jur. 271.

*L. O. Thomas,* Salt Lake City, *Derrah B. Van Dyke,* Ogden, *Stuart P. Dobbs,* Ogden, *Ira A. Huggins,* Ogden, for plaintiff.

*George S. Barker,* Ogden, for defendants.

LATIMER, Justice.

This proceeding was instituted to prohibit Ogden City, Utah, from levying and collecting a license tax upon attorneys engaged in practicing law within its corporate limits. A temporary writ of prohibition was issued and plaintiff seeks to have the same made permanent.

Plaintiff's principal arguments in support of a permanent writ center around an attack upon the validity of an ordinance as it is applied to attorneys. His assertions are primarily that the practice of law is not within the scope of the taxing powers granted to municipalities, and, since lawyers are not subject to regulation by municipalities, they are not subject to licensing by the same bodies. The city answers plaintiff's contentions by asserting that since the ordinance was enacted solely for the purpose of raising

revenue the power to tax or license is granted by Section 15-8-80, U. C. A. 1943.

On April 15, 1949, the Board of Commissioners of Ogden City, Utah, adopted an ordinance requiring that any person who engages in business within the corporate limits of Ogden City must obtain a "Business License," the fee for such license to be graduated according to gross receipts of the business. The ordinance has its own glossary which provides that

"Business as used in this ordinance shall include all activities engaged in or caused to be engaged in with the object of gain or economic profit, but shall not include the acts of employees rendering service to employers."

The glossary also provides that .

"The words engaging in business as used herein shall specifically include, but not be limited to, engaging in selling any tangible property either at retail or wholesale, engaging in the manufacture of tangible property and selling the same for retail, and the rendering of personal services for others for a consideration by persons engaged in any profession, trade, craft, business, occupation or other calling."

The principal disagreement between the parties requires that we analyze and interpret Sections 15-8-39 and 15-8-80, U. C. A. 1943. The former provides as follows:

"They (cities) may license, tax and regulate hawking and peddling, pawnbrokers and loan agencies, employment agencies, auctioneers and auction houses, music halls, theaters, theatrical and other exhibitions, shows and amusements, the business conducted by ticket scalpers, distilleries and breweries, brokers, and keepers of public scales; stages and busses, sight-seeing and touring cars or vehicles, cabs and taxicabs, and solicitors therefor; bathhouses, swimming pools, skating rinks; smelters, crushers, sampling works and mills; hotels, and other public places, boarding houses, restaurants, eating houses, lodging houses, laundries, barber shops and beauty shops; hackmen, draymen, and drivers of stages, busses, sight-seeing and touring cars, cabs and taxicabs and other public conveyances, porters, expressmen and draymen and all others pursuing like occupations, and prescribe their compensation; may license, tax and regulate secondhand and junk stores and forbid the owners or persons in charge of such stores from

purchasing or receiving any articles whatsoever from minors without the written consent of their guardians or parents; may license, tax and regulate storage houses and warehouses and require bond to the city for the benefit of bailors therein; may license, tax and regulate the business conducted by merchants, wholesalers and retailers, shopkeepers and storekeepers, automobile garages, service and filling stations; butchers, bakeries, laundries, druggists, photographers, assayers, confectioners, billboards, billposting and the distribution or display of advertising matter."

Section 15-8-80, U. C. A. 1943, provides as follows:

"They (cities) may raise revenue by levying and collecting a license fee or tax on any business within the limits of the city, and regulate the same by ordinance; provided, that no Utah city or town shall collect a license fee or tax hereunder from any solicitor or salesman who solicits, obtains orders for or sells goods in such city or town solely for resale; and no enumeration of powers of cities contained in title 15, chapter 8, Revised Statutes of Utah, 1933, shall be deemed to limit or restrict the general grant of authority hereby conferred. All such license fees and taxes shall be uniform in respect to the class upon which they are imposed."

The business of practicing law does not come within the scope of power granted by Section 15-8-39, U. C. A. 1943, since by expressly enumerating the businesses which can be licensed, regulated and taxed the legislature has inferentially limited the power of the cities to deal with those businesses listed in that section. Therefore, if Section 15-8-80, U. C. A. 1943, does not grant additional power to a city and authorize it to levy and collect a license fee or tax on businesses other than those specifically catalogued, then Ogden City has no authority to embrace attorneys within the scope of the ordinance.

Plaintiff contends that the rule laid down by this court in the case of *Ogden City* v. *Boreman*, 1899, 20 Utah 98, 57 P. 843, 845, controls the instant case. There, the city of Ogden sought to impose a license on lawyers practicing within its corporate limits. The claimed authority for the ordinance under attack in that case was subsection 87, Sec-

tion 206, Rev. Stat. 1898, which provided that the city council should have the power to

"raise revenues by levying and collecting a license fee or tax on any private corporation or business within the limits of the city, and regulate the same by ordinance."

That subsection was the predecessor to Section 15-8-80, U. C. A. 1943. There was involved in that decision subsection 38 of Section 206, Rev. Stat. 1898, which in most respects was similar to Section 15-8-39, U. C. A. 1943, above quoted and which provided as follows:

"To license, tax, regulate hawking, peddling, pawnbrokerage, employment agencies, the keeping of ordinaries, theatrical, and other exhibitions, shows, and amusements, and the business conducted by ticket scalpers, distillers, brewers, money-changers, brokers, keepers of public scales, runners for stages, cars, public houses, or other persons or things, and to revoke such license at pleasure; to license, tax, and regulate banks, bath houses, livery stables, skating rinks, smelters, crushers, express companies, restaurants, hotels, taverns, theatres, opera houses, music halls, boarding houses, eating houses, chop houses, lodging houses, laundries, barber shops, second hand or junk stores, and to forbid the owners or persons in charge of said stores from purchasing or receiving any article whatever from minors without the written consent of their guardian or parents; to license, tax, and regulate the business conducted by hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen, watermen, and all others pursuing like occupations and to prescribe their compensation; to license, tax, and regulate the business conducted by merchants, retailers, shop and storekeepers, butchers, druggists, photographers, assayers, confectioners, and fruit peddlers."

This court held that those two statutes should be construed together and with relation to each other and in light of the fact that there had been a previous statutory provision, Chapter X, Sec. 288, subdivision 6, Compiled Laws of Utah 1888, expressly permitting cities to license lawyers, which was repealed at the time subsection 38, Section 206, Rev. Stat. 1898, was enacted. In determining the legislative intent the court gave consideration to the three following acts of the legislature: (1) specifically enacting

subsection 38, Section 206, Rev. Stat. 1898, which enumerated the businesses that could be licensed, taxed and regulated by cities; (2) repealing the previous legislative enactment permitting license fees or taxes to be charged against lawyers; and (3) enacting subsection 87, Section 206. Rev. Stat. 1898, which was a general grant to cities to raise revenue by levying and collecting license taxes. Mr. Justice Miner, in speaking for the court, stated the reasons for the holding in the following language:

> "By repealing the clause providing for licensing and taxing lawyers, and enacting the general clause referred to, leaving lawyers and the professions generally out of such re-enactment, impels the conclusion that the legislature intended to deprive the cities of the power to impose a license fee or tax upon lawyers that they had formerly possessed. There must have been an object and purpose in this deliberate repeal in one section and omitting to insert its provisions in the act as re-enacted, having special reference to licensing and taxing in cities. And, when subdivision 87 is considered with reference to subdivision 38 and the repeal of subdivision 6 of Section 288, it is evident that it was not intended that lawyers should be licensed or taxed under its provisions."

The contention that the holding in the *Boreman* case should control would merit serious consideration if the legislative grant of power to municipalities to raise revenue by levying and collecting license fees had not been enlarged since the *Boreman* decision. However, Section 15-8-80, U. C. A. 1943, supra, contains an amendment which was made in 1935 and which provides as follows:

> "* * * no enumeration of powers of cities contained in title 15, chapter 8, Revised Statutes of Utah, 1933, shall be deemed to limit or restrict the general grant of authority hereby conferred."

This amendment removed the necessity of this court construing the two sections together to determine the legislative intent as the enumeration of powers contained in title 15, chapter 8, Revised Statutes of Utah, 1933, embraces Section 15-8-39, U. C. A. 1943. Plaintiff concedes that the amendment may lessen the ef-

fectiveness of that part of the *Boreman* decision which deals with construing the two sections granting powers to the cities, but asserts that the reasoning of the court on the legislative intent as evidenced by the repeal of the section which specifically granted cities the right to tax lawyers is left unweakened. We see no reason why the 1935 amendment should not require a new approach to the whole problem. The effect of the amendment was to remove the shackles placed on municipalities by the legislative enumeration of specific types of business and give to them an unrestricted power to raise revenue by levying and collecting a license fee or tax on any and all businesses operating within the limits of the city. Since, by the amendment no existing statutory provisions were to be deemed to limit or restrict the general grant of authority to tax for revenue purposes, it seems unreasonable to expect that limitations, inferred from the repeal of a former section, even though given consideration by this court as one element in determining legislative intent, should remain unaffected by the 1935 amendment. Assuming that in 1898 the legislature intended to exempt attorneys, there is evidence by the subsequent amendment a legislative intent to remove the existing bars and grant power to raise revenue by taxation of businesses not previously subjected to tax. The legislature is presumed not to do a useless or futile act and so the only purpose of enacting the 1935 amendment was to grant to municipalities the power to tax those businesses operating within the city limits which had previously enjoyed immunity because of being exempted by limiting enactments or by their administrative or judicial construction. Moreover, in 1931, this court in the case of *Morgan* v. *Salt Lake City et al.*, 78 Utah 403, 3 P. 2d 510, dealt with certain sections of the Compiled Laws of Utah 1917, which were the earlier enactments of, and in most respects similar to, the two sections of the 1943 code previously quoted. In that case, we held that Salt Lake City did not have the power to impose a license or tax upon the operator of a card room because the section of the statutes then in force and effect

did not enumerate a card room as one of the businesses which could be licensed, taxed, or regulated by the city. At that time, the section included approximately seventy-five types of businesses, and, under the construction adopted by this court, the general section then dealing with the right to raise revenue was inapplicable because of the rule of construction to the effect that the expression of one thing (business) implies the exclusion of the other. It is a reasonable inference that the legislators in 1935, after having their attention directed to the facts that there was an apparent loop-hole in the statutes; that even though some seventy-five businesses were enumeraed in the statutes the listings were not all-inclusive; and, that some businesses which should bear a fair share of the tax burden were escaping, concluded that the simplest and most effective way of eliminating a technical rule of construction was to provide an amendment to section 15-8-80, U. C. A. 1943. To accomplish this the section was amended by prescribing that the express enumeration of powers of cities to license, regulate and tax, contained in the other sections of the chapter was not to be deemed to limit or restrict the general grant of authority to tax for revenue purposes.

Plaintiff next contends that Section 15-8-80, U. C. A. 1943, supra, applies only to businesses which can be regulated by cities and since the practice of law is not within the city's power to regulate, it is not within its power to tax. This argument assumes that under the statute the power to raise revenue by taxation of businesses and the power to regulate are interdependent. It is generally conceded that cities do not have the power to regulate the practice of law. However, the ordinance is not an attempt to regulate the legal profession, it is merely for the purpose of raising revenue for the city. The question, then, is whether the city may use the taxing power delegated to it by the statute when it may not use the regulatory power permitted by the same statute. We believe that the intent of the legislature, as expressed by the wording

of the act, was that the two powers should be separable and that the power to levy a license fee was not made dependent upon the power to regulate the particular business.

In *Ogden City* v. *Crossman*, 1898, 17 Utah 66, 53 P. 985, the city of Ogden, for revenue purposes, imposed a tax of five dollars per annum on each telephone instrument in the city of Ogden. There, we upheld the tax, even though it was in excess of the amount needed for regulation. Mr. Justice Miner, speaking for the court, said, at page 78 of 17 Utah, at page 989 of 53 P.:

"* * * Under the circumstances, where, by the constitution and statute, express authority is given to raise revenue by levying and collecting a license fee or tax upon any private corporation or business within the limits of the city, and regulate the same by ordinance, it is held that *the municipality is not limited to the mere expense of the regulation, but that it may impose a reasonable license tax for the purpose of obtaining revenue necessary to meet the general expenses of such municipality. * * *"*

In the case of *Matthews* v. *Jensen*, 1900, 21 Utah 207, 61 P. 303, this court was considering the licensing of sheep by the Board of County Commissioners of Cache County. There, the author of the opinion commented on *Ogden* v. *Crossman, supra,* as follows at page 217 of 21 Utah, at page 305 of 61 P.:

"Whether or not that case was correctly decided, and whether we would now, upon further consideration, place the same interpretation upon those sections of the constitution, are questions immaterial here, under the view we have taken of this case. For all purposes herein, it may be admitted that the principles stated in that case, with reference to an ordinance passed by a city, apply with equal force to one passed by a county, and that *the legislature has plenary power to authorize a board of county commissioners to impose a license upon occupation for revenue only, even in the absence of any regulation, police or otherwise, of the business. * * *"*

In view of the wording used by the author in that particular opinion, we call attention to the language of Sections 15-8-39 and 15-8-80, U. C. A. 1943. The former starts with

"They (cities) may license, tax and regulate" and then there, follows an enumeration of businesses which are subject to both license ordinances and regulating ordinances. The latter section, however, starts out as follows:

"They (cities) may raise revenue by levying and collecting a license fee or tax."

The difference in phraseology is only important because in the *Matthews* case the opinion contains the following language:

"* * * A mere tax imposed upon a business or occupation, therefore, is not a license, unless the levy confers a right or privilege as to the business which would not otherwise exist. So, a right to license a business or occupation does not imply a right to exact a tax merely for revenue, and where the object is revenue the power to license for that purpose must be conferred in unequivocal terms."

It would appear from the wording of Section 15-8-80 that the power to license for revenue purposes was conferred in unequivocal terms and meets the test prescribed in the *Matthews* decision.

Even were we not able to diferentiate some of the principles announced in the *Matthews* opinion from those presently involved, it is doubtful whether the language relied on by the plaintiff is not dictum for the reason that the important principle announced in that case was that the tax was arbitrary and discriminatory. The court found that the primary purpose of the ordinance was to raise revenue. However, the Board of County Commissioners had singled out the sheep business and had imposed a license solely upon the business of raising, herding and pasturing sheep. The court refused to uphold the tax on the ground that it was unequal and oppressive and said, 21 Utah at page 227, 61 P. at page 308:

"* * * Private rights cannot thus be arbitrarily invaded or annihilated, under the mere guise of a license. One class of citizens cannot thus be compelled to bear the burdens of government, to the

advantage of all other classes. The law, as we have seen, will not permit it. Neither the constitution nor the statute authorizes boards of county commissioners to enact ordinances, as in this instance, to tax citizens arbitrarily and unjustly, by license which confers no privilege that was not previously enjoyed, and which has no view to regulation. Unjust and illegal discrimination between persons, in taxation, and the denial of equal justice, are within the prohibitions of the constitution of this state, and of the United States. No person can be deprived of his property without due process of law."

We think that pronouncement distinguishes that action from the instant case. Here, the ordinance is applied to all businesses within the corporate limits of the city of Ogden.

In *Provo City* v. *Provo Meat Packing Company*, 1917, 49 Utah 528, 165 P. 477, Ann. Cas. 1918D, 530, defendant was protesting the imposition of two separate municipal taxes, one an occupation tax on merchants who carried on business in Provo City and the other a regulatory tax imposed upon those engaged in the business of slaughtering and/or selling fresh meat in Provo. The court attempted to clarify the situation with regard to the imposition of those two types of taxes upon local businesses. We quote from pages 531 and 532 of 49 Utah, at page 479 of 165 P., Ann. Cas. 1918D, 530:

"* * * The term 'occupation tax' is, however, sometimes also applied to a license fee or license tax, and thus some confusion has at times arisen concerning the meaning of the two terms. Properly speaking, a license fee or a license tax comes within and is based upon the police power of the state to regulate or to prohibit a particular business. Such a fee or tax is primarily intended to regulate a particular calling or business, and not to raise revenue, while an occupation tax is primarily intended to raise revenue by that method of taxation. * * *"

After discussing the 1917 statutory provisions similar to Sections 15-8-39, U. C. A. 1943, and 15-8-80, U. C. A. 1943, as applied to the facts of the case, the court then said, 49 Utah at page 533, 165 P. at page 479, Ann. Cas. 1918D, 530:

"Now, we have pointed out that, under our Constitution, both an

occupation tax and a license fee or tax may be imposed. We have also shown that *the Legislature of this state has clearly conferred both the power to impose an occupation tax for revenue purposes and to impose license fee or tax for the purpose of regulation under the police power*, and hence the objection of want of power must fail."

In keeping with the reasoning of the *Provo City* case it would appear the legislature intended that Section 15-8-39, U. C. A. 1943, was to be considered as a delegation of power to municipalities to license and regulate certain businesses that required regulation to protect the health, morals and general welfare of the public, while Section 15-8-80, U. C. A. 1943, was to be considered as primarily a delegation of the taxing power for revenue purposes, thus allowing cities to impose an occupation tax on those businesses which did not require close supervision and regulation. We hold that such was the legislative intent and that the provisions are not interdependent.

The next question posed for consideration is whether members of the legal profession because they are part of the judicial branch of the government are subject to licensing by municipalities. Allowing the judicial department to maintain its independence, to control admission to practice law, to discipline its members, and to prescribe rules for their conduct before the courts of the state does not require that members of the profession be exempted from the various civil and criminal statutes or ordinances of the state, county or cities. See *Thatcher* v. *Industrial Commission*, 115 Utah 568, 207 P. 2d 178. As members of the bar, their admission to practice and their professional conduct after admission are essentially matters to be regulated by the judicial department of the state. As members and citizens of the state, county and city, their rights, privileges and immunities, as well as their duty to pay a fair share of the expenses of government, like those of any other citizen, are controlled by the laws, ordinances and regulations of the political body of which they are a part and from which they receive

protection. No one could reasonably contend that lawyers as a class are not subject to laws enacted pursuant to the police powers of the state or municipality and the members of the profession would protest any attempt to deny to them the services afforded by the various sovereignties. There is no rational basis for a contention that lawyers are privileged because of their calling and should not be subject to the provisions of an ordinance enacted for the purpose of raising revenue to defray city expenses unless there is a showing that the ordinance is discriminatory. A license to practice law issued by the state does not grant immunity from taxation. Under somewhat similar circumstances the city of Los Angeles imposed an occupation tax upon the business of attorneys-at-law. In the case of *Ex parte Galusha,* 184 Cal. 697, 195 P. 406, 407, the Supreme Court of California disposed of this same contention in the following language:

"As in the case of other professions or businesses which can be taxed by the state, the cases hold that the state can delegate to a municipality the power to impose a tax for the privilege of following the practice of the profession within the jurisdiction of the municipality. *Goldthwaite* v. *Montgomery,* 50 Ala. 486; *St. Louis* v. *Sternberg,* 69 Mo. 289, Id., 4 Mo. App. 453; *Wilmington* v. *Macks,* 86 N. C. 88, 41 Am. Rep. 443. The imposition of an occupational tax by a municipality upon those engaged in the practice of the legal profession is not an interference with state affairs. The mere compliance of certain prerequisites; in return for which a license to practice law is granted by the state, does not place a person beyond the range of additional regulation of the conditions upon which the license may be used. The municipality, in imposing an occupational tax upon attorneys, is not interfering with state regulations, for it is not attempting to prescribe qualifications for attorneys different from or additional to those prescribed by the state. It is merely providing for an increase in its revenue by imposing a tax upon those who, by pursuing their profession within its limits, are deriving benefits from the advantages especially afforded by the city. The tax levied upon the business of practicing law, rather than upon a person because he is an attorney at law. * * *"

Plaintiff, however, argues that the ordinance is discriminatory and arbitrary because it exempts those attorneys

who are employed by other persons, firms or corporations. This argument is based upon the mistaken premise that this is a tax on incomes earned within the city of Ogden, while in reality it is an occupation tax. Being an occupation tax, the classification is reasonable and not arbitrary because it includes all businesses operated within the city. There is no denial of equal protection, no invasion of the privileges and immunities of any class of citizens and the ordinance operates equally upon all persons similarly situated.

In the case of *Slater* v. *Salt Lake City,* 115 Utah 476, 206 P. 2d 153, we reviewed some of the authorities dealing with unconstitutional ordinances and discussed the elements necessary to render an ordinance invalid because of discrimination. We quote from that decision, at page 160 of 206 P. 2d:

"This court has passed on the constitutionality of statutes and ordinances and has tested them by the rule of unjust discrimination. In *State* v. *Mason,* 94 Utah 501, 78 P. 2d 920, 117 A. L. R. 330; *Broadbent et al.* v. *Gibson,* 105 Utah 53, 140 P. 2d 939; and *Wallberg et al.* v. *Utah Public Welfare Commission et al.,* 115 Utah 242, 203 P. 2d 935, we discussed the elements necessary to render a statute or ordinance unconstitutional because of discrimination. Discrimination is the essence of classification and does violence to the constitution only when the basis upon which it is founded is unreasonable. In fixing the limits of the class, the legislative body has a wide discretion and this court may not concern itself with the wisdom or policy of the law. Our function is to determine whether an enactment operates equally upon all persons similarly situated. If it does then the discrimination is within permissible legislative limits. If it does not, then the differentiation would be without reasonable basis and the act does not meet the test of constitutionality."

In the instant case the purpose of the ordinance was to raise revenue. In order to accomplish this purpose the city of Ogden used the means provided and authorized by Section 15-8-80, U. C. A. 1943, by levying and collecting a license fee or tax on businesses operating within the city. The failure of the ordinance to include wage earners along

with businesses is not arbitrary and capricious as employees are not persons similarly situated to those members of the profession who operate their own businesses.

Plaintiff's last contention that this tax is in excess of the power delegated to cities because it is in the nature of an income tax must also fail. An occupation tax does not become an income tax because the amount levied ▮ is based upon gross income. Using gross income as a base for determining the amount of tax may be considered one means of ensuring greater fairness and equality in taxation.

In *Salt Lake City* v. *Christensen Company,* 34 Utah 38, 95 P. 523, 17 L. R. A., N. S., 898, this court considered a license tax imposed by the City of Salt Lake, which tax was based and graduated according to the amount of capital employed in the businesses conducted within the city. The court said at page 43 of 34 Utah, at page 525 of 95 P., 17 L. R. A., N. S., 898:

"Independently of the constitutional exception above discussed, the courts have frequently passed upon and applied the general constitutional provision demanding equality and uniformity of taxation. [Art. 13, § 3.] The decisions are almost, if not quite, unanimous that the constitutional provision which imposes equality and uniformity of taxation has no application to an occupation or license tax, but is limited to a direct property tax which is assessed and collected in the usual way. * * *"

There, it was held that the graduation of the tax rates made for greater uniformity. The court said that there was no method of taxation that is absolutely equal and uniform and that the method provided by that ordinance was to be left to the discretion of those whose duty it is to impose and collect the taxes.

"Where neither the Constitution nor the statute imposes absolute restrictions, the courts may not arbitrarily impose any unless it clearly appears that the tax imposed is oppressive, or clearly and unreasonably discriminatory, and thus is an abuse of the taxing

power." At page 47 of 34 Utah, at page 527 of 95 P., 17 L. R. A., N. S., 898.

In the instant case, we are considering an occupation or license tax on businesses. The board of commissioners of Ogden City decided that a fair way to levy and collect this tax was on the gross income of the businesses concerned. That they based the amount of the tax on gross income does not constitute the imposition of an income tax. Rather, this is one of the permissible means a taxing unit may use in providing for greater equality and more uniformity in imposing the tax.

We reserve a discussion of the legal principles involved should Ogden City seek to collect a license tax from lawyers not engaged in business in that city. Facts have not been alleged which indicate that an attempt is being made to license out of city attorneys and so we have assumed that the ordinance will only be constitutionally applied to those members of the profession who maintain offices or places of business within the corporate limits of Ogden City. For the purpose of this action, Ogden City concedes the ordinance cannot embrace attorneys whose place of business is elsewhere than in that city.

The temporary writ of prohibition is recalled and the action dismissed. Each party to bear their own costs.

·WOLFE and McDONOUGH, J., concur.

PRATT, Chief Justice (dissenting).

The prevailing opinion has jumped into two conclusions from a premise that will support only one.

Let us quote the provision in Volume 1, Compiled Laws of Utah, 1888, pertaining to the professions, that was repealed and not included in the Revised Statutes of 1898.

It reads:

"To license, tax and regulate lawyers, surgeons, physicians, dentists, and other like professions   *   *   *."

At the time that the quoted section appeared in the laws of 1888, the following section also appeared:

"To raise revenues by levying and collecting a license fee or tax on any private   *   *   *   *business* within the limits of the city   *   *   *." (For purposes of this discussion this is the same as Sec. 15-8-80 in the prevailing opinion.)   (Italics added.)

Obviously the legislature at that time did not think that the word "business" included "professions," so a section was put in the law to cover "professions."   (The first quotation above.)

The *Boreman* case holds:

"By repealing the clause providing for licensing and taxing lawyers, and enacting the general clause referred to, leaving lawyers and the professions generally out of such re-enactment, impels the conclusion that the legislature intended to deprive the cities of the power to impose a license fee or tax upon lawyers that they had formerly possessed.   There must have been an object and purpose in this deliberate repeal in one section and omitting to insert its provisions in the act as re-enacted, having special reference to licensing and taxing in cities.   And when subdivisions 87 is considered with reference to *subdivision 38* and the repeal of subdivision 6 of Sec. 288, it is evident that it was not intended that lawyers should be licensed or taxed under its provisions."   (Italics added—subdivision 6, Sec. 283 is the first quotation above.)

*Subdivision 38* referred to is the one which is comparable to section 15-8-39, U. C. A. 1943, quoted in the prevailing opinion.   It enumerates the various kinds of *business* that may be licensed and regulated.   It is the present detail of this section which the prevailing opinion says we need not consider any longer.   The reason? Because Section 15-8-80, U. C. A. 1943 (quoted in the prevailing opinion), includes these words:

"*   *   *   no enumeration of powers of cities contained in title 15, chapter 8, Revised Statutes of Utah, 1933, shall be deemed to limit or restrict the general grant of authority hereby conferred."

This brings us to the conclusion, adopted by implication in the prevailing opinion, that is not supported by that premise.

It is true that the clause last above quoted, throws the field wide open for the application of Section 15-8-80, U. C. A. 1943, to all kinds of *business;* but there is no reason nor logic for concluding that as the result of the opening of that field that "professions" have suddenly become kinds of "business" and thus included in the terms of Section 15-8-80. The distinction between a profession and a business is still recognized.

We have repeatedly recognized the practice of law as a profession. We've recognized it in our cases by using such terms as "legal profession," or "professional capacity." *Ruckenbrod* v. *Mullins,* 102 Utah 548, 133 P. 2d 325, 144 A. L. R. 839; *In re Jones,* 68 Utah 213, 249 P. 803. We recognize it in our rules governing "Professional Conduct." Section 6-0-14, U. C. A. 1943, refers to "professional" misconduct. These are but a very few specific instances pertaining to lawyers. Section 79-9-18, U. C. A. 1943, defines "unprofessional conduct" as it applies to the medical profession. Section 79-6-8, U. C. A. 1943, defines the "unprofessional conduct" in the practice of dentistry. It seems rather superfluous to mention these facts, but I wish to emphasize the point that "profession" and "professions" are not just passing words to be discarded as merely decorative of a means of livelihood. It is interesting to note that the Commission who enacted the Ogden City ordinance in question were very particular to define "engaging in business" as including "the rendition of services by persons engaged in any profession." (See Section 20b of the Ordinance.) If "business" included "profession" this was surplusage.

The State has not authorized the cities to license professions.

There is no question about the fact that under proper authority and under proper enactments cities may license the professions. *Abraham* v. *City of Roseburg,* 55 Or. 359, 105 P. 401, Ann. Cas. 1912A, 599; 5 Am. Jur. 269, Sec. 13 and notes. *Newlin* v. *Stuart,* 273 Ky. 626, 117 S. W. 2d 608.

Little or nothing has been said about the wording of this ordinance. I can't escape the belief that, as the majority of this court upholds it as a valid exercise of city licensing power, it will become the foundation for similar enactments throughout the State. If so, I think it is so broad and uncertain as to how it will be applied to the professions, that it cannot be justly enforced. The power of final determination of the amount of the license lies with the City Recorder (Sec. 18) who presumably will be a layman unfamiliar with what is meant by the practice of law, and upon whose shoulders will lie the burden of deciding issues under such provisions as:

"*Only receipts from that portion of business engaged in within the corporate limits of*"—*blank city*—"*shall be included in gross receipts as used herein.*" (Sec. 20c.)

The practice of law is not defined by the ordinance, nor are any rules provided to aid the Recorder in allotting business between offices if an attorney conducts an office in each of two cities and his practice is State wide. Such broad unrestricted power as is contemplated by the ordinance will lead to arbitrary action.

WADE, J., concurs in the views expressed in the dissenting opinion of PRATT, C. J.

WOLFE, Justice (concurring in the order denying the Petition for Rehearing). (223 P. 2d 412.)

I express below my reasons for denying the petition for rehearing in this case. I have considered the new point raised by the briefs in support of the petition for rehearing. This being a case of prime importance to large groups

of our citizens, we should not take refuge in the rule that points not raised in the original hearing will not be considered. As stated in *Gardner* v. *Thomas et al.,* 94 Utah 295 at page 299, 78 P. 2d 529, that rule is one designed for the orderly administration of the disposal of points on appeal but is not as the law of Medes and Persians. There may be exceptions, and this is one of them.

Point I in Davis' brief on petition for rehearing asserts that the Ogden City Ordinance was passed without regard to the limitation on excise taxes contained in Section 3, Article XIII of the Constitution of Utah.

Section 3, Article XIII contains the following:

"* * * No excise tax rate based upon income shall exceed four per cent of net income. The rate limitations herein contained for taxes based on income and for taxes on intangible property shall be effective until January 1, 1937, and thereafter until changed by law by a vote of the majority of the members elected to each house of the Legislature."

The brief proceeds under Point I with:

(A)   The tax imposed by the Ogden Ordinance is an excise tax. (B) The tax is based on income. (C) The constitutional limitation above quoted applies to municipal taxes. For the purposes of this discussion, I think we may admit these three propositions.

I pass from these three proposition to D, E, F and G, all of which will be discussed in part together because they all pertain to the propositions that this tax imposed by the ordinance is unconstitutional because it brings about, when fitted in with Section 3, Article XIII, an unconstitutional discrimination. In order to inform the reader as to the propositions contained in the brief of Davis, the petitioner, I quote the four propositions hereunder before each argument but before doing so, address myself to a general discussion of the office performed by Section 3, Article XIII.

Section 3, Article XIII, puts a ceiling on the amount of excise tax which, based on income, may be collected. The ceiling is 4% of the net income. Laying aside what constitutes net income and how figured, it appears that in any case the tax figured, at twenty cents per thousand of gross income must not exceed 4% of net income. For illustration, if a company grosses $1,000,000 from sales, the excise tax laid by this ordinance would be $200.00 (1000 times 20 cents). But if the net income, for instance, were $4000.00, the company having expended much money on advertising, the tax could not exceed $160 (4% of $4000). More illustrations are set out hereunder.

Here arises at once a query which I doubt need at this time be answered. Is not the 4% excise tax the limit of the total excise taxes which may be based on income whether state and/or city? If for example the 4% is all taken up by the state excise taxes, would there then be room left for the imposing of any further license tax by a city and, if not, which takes precedence? Also arises the question whether Section 3, Article XIII applies to other than state excise taxes.

These queries, which even though we assume for the purposes of this discussion that Section 3, Article XIII applies to excise taxes imposed by municipalities, need not trouble us except perhaps as they may enter incidentally into the ratio decidendi.

Now as to whether the ordinance will work an unconstitutional discrimination: I gave above one illustration where a business grossing a million dollars a year made a net of $4000. At this point I call attention to the word "rate" in the line reading

"* * * No excise tax *rate* based upon income shall exceed four per cent of net income."

It does not read

"* * * no excise tax * * * based upon income shall exceed 4% of the net income."

The word "rate" usually connotes a proportion. A levy on tangible property is the rate or proportion of the assessed value—so many mills or cents on the dollar which applies equally throughout a certain category or tax bracket—it being fixed. I have difficulty in applying the word "rate" to this constitutional provision. I think the drafters of that amendment must have meant

"no excise tax [i. e., the result of an applied rate] based on income shall exceed 4% of the net income."

I have so interpreted the language.

Also I should state at this point that constitutionality must be measured against the 5th and 14th Amendments of the Federal Constitution, and not the equal protection of our state constitution, because as far as discrimination under our constitution is concerned, it would seem that if the people themselves put in the state constitution the factor which makes the discrimination, to wit, the variable ceiling which brings about the dissimilarity in the application of law or ordinance in excise tax cases, no complaint will be heard because the discrimination was part of the basic law.

But under the Federal Constitution the only way that one business with a gross income equal or less than another would pay a greater tax is because it had a larger net than the other business. Section 3 of Article XIII really announces a variable ceiling and this variable ceiling applied to the ordinance may result in businesses with the same or less gross than other businesses paying a greater tax.

To proceed then with several more examples. If in the above illustration the net income were $5000 instead of $4000, 20¢ on each one thousand dollars of the million dollars would exactly equal the 4% on the said net income of $5000. If the net income were $6000, the excise tax of 20¢ per $1000 would of course still be $200 but 4% of $6000 is $240 but since $200 does not exceed $240 the total of the $200 is payable.

If the gross should be $10,000,000 the 20¢ per $1000 would equal 20¢ x 10,000 or $2,000. In such case the $700 ceiling and not the 4% on net income ceiling would first limit the tax. If the business made *no* money or lost money then 4% of nothing would be nothing and the excise tax could not exceed nothing which of course mean that nothing need be paid.

I see nothing in Point ID which leads to the conclusion that if *some* taxes when figured on the gross would exceed 4% of the net income, the ordinance would be invalid. Certainly the 4% net is only a ceiling. Each taxpayer may apply that ceiling if it is applicable to his tax. It means, however, that each taxpayer in order to take advantage of the ceiling may have to disclose his net and hence all his expenses and deductions by which he arrives at that net. It may be that there should be an end of reports and returns that a taxpayer need make and an end to the number of authorities to which he must reveal the details of his business and his income and expenses, but the remedy I think is political.

Can we point to a situation where some businesses (and I include professions among businesses in this discussion) which have a less or equal gross income than other businesses, yet pay more taxes than those other businesses under the ordinance? Of course this will be true as shown above if they have a net which exceeds the net of other businesses having the same gross. They may have the same gross and yet pay different amounts in taxes. But I doubt if they are "similarly situated" if they take in the same gross but different net incomes. Take the illustration of the $1,000,000 gross. One business spends more than that for advertising and has a loss. Another with exactly the same gross with good will established in exactly the same type and kind of business, let us say the manufacture and sale of shoe polish, has a net income of $60,000. The one would, under the ordinance, pay no excise tax, the other would pay $200, the tax under the ordinance being considerably under

the ceiling of 4% of a net of $60,000 which is $2,400. I do not think the fact that one makes sufficient net so that the constitutional ceiling is not reached by the gross income tax in his case while the other makes so little or no net so to make the constitutional ceiling of 4% of net applicable to him works an unconstitutional discrimination. The very fact that they have different net incomes makes them, as to this ceiling, dissimilarly situated. The fact that the ceiling varies according to the net income makes a dissimilarity as far as discrimination is concerned. The ceiling works in favor of the party who has the lowest net and hence has gotten the least benefit from his gross income.

Among those comparatively few who must pay this ordinance imposed tax and who have a net, 4% of which is greater than 2/100 of one percent (20¢ per each thousand dollars of gross) of their gross, there may be some variation in the tax among those who have exactly or substantially the same gross. Take for instance the two cases I presented where there is a gross of $1,000,000 but having different nets all under $5000. The one with $3000 net would pay $120; the one with $4000 would pay $160, and the one with $5000 net would pay $200. One with $2000 net would pay $80.00. The one with no net would pay nothing. Thus among that limited class the different nets under $5000 would result in different tax maximums although they all had the same gross income. But the factor which works these different maximums among those with the same gross is not some arbitrary factor extraneous to the business. It arises from a factor intrinsic in the business and directly connected with income both net and gross, the net being the gross less expenses, the gross being the total intake. Thus as the net increases, the ceiling or maximum increases until it reaches a maximum which is a sum produced by 20¢ per thousand on the gross which is the amount of the tax itself. Within that limited range of taxpayers whose net is from zero to $5000 this maximum varies directly with the net so that when we consider the

variable ceiling of 4% on net income which is the variable factor of which complaint is made, we find that its operation synchronizes with the net. If the ceiling became less as the net rose, the differences in the variable ceiling might bear no reasonable relationship to the purposes of the ceiling and unconstitutionality could be tenably argued. The variable ceiling in this case works in favor of the party who has the lower net and hence has gotten less benefit from his gross income.

Under Point I then, I would agree that: (A) The tax imposed is an excise tax; (B) The tax is based on income; and for the purposes of this case only that (C) The constitutional limitation applies to municipal taxes, although this is doubtful.

The petitioner further contends:

"(D) The rates of tax under the Ogden ordinance exceeds four per cent of net income."

Much that has been said above is material under this point.

That in some cases the computed amount of tax under the Ogden ordinance will exceed 4% of the net income is admitted but in such case the taxpayer will need to pay only up to the 4% and the fact that one party in a certain year pays no tax because of the variable ceiling which ceiling is determined not by an outside imposed figure but by internal factors within the business itself, while another party having the same gross does pay a tax, does not make it unconstitutional for reasons above enunciated.

"(E) The unconstitutionality of the ordinance may be invoked by the plaintiff."

Granting that the alleged unconstitutionality of the ordinance may be invoked by the plaintiff, he has not, under Point I, made a case of unconstitutionality. If plaintiff or those whom he represents can show that the ceiling applies

to them, they will either not pay the tax at all or only a part of it.

"(F) The tax is discriminatory under which head it is contended that it may be made confiscatory."

That the tax is unconstitutionally discriminatory has been previously discussed.

Confiscation: The fact that a city may raise the rate from 20¢ a $1000 gross—a rate of 2/100 of 1% to 1% or even to 5%, I do not believe is an argument for declaring 2/100 of 1% unconstitutional because those larger rates may be confiscatory. It may be difficult to know where to draw the line after the door is once opened, between confiscatory and non-confiscatory rates but for that reason I am not prepared to say that because a rate may sometime be made so high as to be confiscatory, that we must close the door now on the method used for measuring the excise tax while it calls for only a modest tax. We must meet confiscation when it comes before us. While the income tax may be the fairest of all excise taxes because its incidence is on money earned, it does not follow that other methods of taxation are illegal.

"(G) Opportunities for favoritism and oppression—a form of discrimination."

I admit that there may be something inherent in the use of "gross receipts" as the basis for a tax base which may make favoritism and oppression easier in that those building up businesses may be subject to large expenses which will cut down their net, although they gross a large sum. It would seem that under present rates and ceilings or any comparable rate, there can be little likelihood of oppression. I can see, however, that if the cities would place such a high rate on the gross as to make the tax confiscatory in that it would take so much of the gross as not to allow a fair opportunity to produce a net or if the maximum fixed by an ordinance would be so high and/or the ceiling of 4% of

the net removed by the legislature or all or any of these things done or happen, the tax might become confiscatory. The difficulty of basing a tax on the gross is, of course, that if the rate is too great it will take so much of the gross as to leave no net. I can see a purpose in trying to stop this measure for an excise tax because of the Pandora's box it may open. But that has not happened and I cannot see anything in the present ordinance that makes it unconstitutional.

I think the ordinance does contain the potentiality for taxing businesses out of existence and for favoritism and oppression. What tax plan has not this possibility? Until the tax becomes or tends toward confiscation, I do not believe we can rule it out and then on the ground that it is confiscatory and not on the ground of unconstitutional discrimination.

Point II. The argument here seems to be that this ordinance does regulate the practice of law. I think not. It does require the licensee to keep his license displayed and visible at all times. While it seems incongruous with the profession of law and medicine to require a lawyer or doctor to keep posted in his office a license which is in effect only a receipt showing that he has paid his city occupational tax, (because some other body has actually licensed him as a professional man), I think this is only administrative to protect the professional man and the city in its tax collection. Likewise, keeping books and records is of the same stripe. Certainly professional men may be required by the state and federal government to do so for income tax purposes. I do not see why this is consistent only with a regulatory function but inconsistent with taxation regulations. A person must obtain a license to drive an automobile and certainly the license is for collection of a tax as well as for regulation, yet it is made a misdemeanor to drive a car without obtaining a license. Cannot it then be made a misdemeanor to fail to obtain a license to do business when the license is a means of collecting a tax for

carrying on this business? May it not be made a misdemeanor to fail to pay a tax? But, if this provision for a penalty may not be imposed for failure to pay a tax, then the penalty rather than the ordinance would fall. See *Salt Lake City* v. *Christensen Co.*, 34 Utah 38 at page 47, 95 P. 523. The provision that a license may be revoked for a violation of any provision of the ordinance or for such other cause justified by law may be somewhat of a bluff because the courts might hold that a city may not revoke a lawyer's or doctor's license to practice for any violation of the ordinance. And it may hold that no cause short of unprofessional conduct in law would be a ground for revocation and that the Supreme Court in the case of lawyers, and the medical board in the case of doctors, only may do that. But an ordinance which contains provisions for revocation or provisions for a penalty which may be nugatory does not make the operative portion imposing a tax nugatory nor convert the real purpose of the ordinance which is revenue raising into a regulation of the professions. I think Point II is not well taken.

Point III. This has already been well considered by the court. But the ultimate question is not whether professions are usually classed as businesses but did the ordinance intend to include them as business. If it intended to impose a license tax on professions, was that within its legal powers?

I now note the points in the brief of Amicus Curiae.

According to Amicus Curiae, the constitution by implication forbids the legislature granting cities the power of imposing a license tax for revenue. He argues that it permits license for the purpose of regulation only, and incidental to regulation, fees may be charged to pay for the cost of regulation, but these need not be exactly equal to the cost of regulation. Approximation is sufficient. Under Point II petitioner, Davis, claims that the ordinance in effect regulates the practice of law and hence is beyond the power of the municipality because the practice of law

cannot be regulated by a municipality even though the legislature should authorize it. Thus attorneys for petitioner and amicus curiae approach the matter from different angles. Amicus Curiae contends that the legislature by an implied restriction in our Constitution (Section 12, Article XIII) cannot delegate to municipalities the power to lay an excise tax on business and hence even if the practice of law is considered a business, a municipality cannot tax it through the licensing process, because it cannot lay a license tax on *any* business. He suggests that if the case of *Ogden City* v. *Crossman* meant to hold that the legislature had the power to enable municipalities to pass ordinances to raise taxes by licensing businesses (which I think it did), it failed to take into account the implied restriction contained in Sections 2, 3, 5 and 12 of Article XIII of our Constitution. On the other hand, Davis, the petitioner, does not contend that there is an implied constitutional restriction which prevents the legislature from giving municipalities the power to raise money by license taxation, but claims that the Ogden Ordinance is in fact an ordinance for regulation and that (conceding the power of municipalities to license for regulation business in general) as to the practice of law it cannot regulate and the ordinance being for the purpose of regulating the practice of law, it must fall.

Amicus Curiae's position is that Section 12, Article XIII of the Constitution was put into the constitution because the framers after setting out in Section 2 of Article XIII a mandate to tax all unexempt tangible property in the state in proportion to its value and under Section 3 of the same article directed the legislature to provide by law for a uniform and equal *rate* of assessment and taxation, wanted it to be understood that it did not intend to preclude by those provisions the power of the legislature to levy stamp taxes or a tax *based* on income. Consequently, it wrote specifically into the constitution this grant of power to the legislature even though the legislature was not so restricted, it having such powers as

are not withheld by our constitution or not granted to the federal government.

My difficulty with amicus curiae's position is that I do not see where he turns the corner. That is, I do not see how he construes this provision which expressly states that the legislature shall not be restricted from imposing a stamp tax, income tax, license or occupation tax as a restriction on the legislature from empowering cities to impose such taxes *unless* he draws it as seemingly does Idaho and Montana from the general tax scheme. I can see that it would be unlikely that the legislature would empower cities each to impose its own income tax. That would result in great lack of uniformity although why cities should not have different income tax rates as they now have different license tax rates and bases is not so clear. And this may give us the clue to the underlying idea that amicus curiae has in mind. He senses that each city may be dealing with its own local situation and that such local situations may require or make appropriate the imposition of *regulation* on some businesses but not on others; hence he argues that it seems appropriate and wise that the legislature be given power to delegate to cities the power to *regulate* businesses, and to levy a fee (tax) for costs of regulation but when it comes to *raising revenue* by imposing an excise tax on those businesses, such appears to be most appropriately a statewide function. And the attorneys for Davis, the petitioner, have at bottom the same idea when they argue that cities should be permitted to license for regulation those businesses that lend themselves to local action but that the practice of the law is not one of these.

It may be asked why other professions would be any more amenable than would the practice of law to local regulation laying aside the point that regulation of the practice of law is a judicial and not a legislative function. Why should cities any more be permitted to regulate the practice of medicine? Why are not all professions as far as regulation is concerned largely such as to require state-

wide regulation so as to insure uniformity? Why is not uniformity of regulation of those professional businesses pecularily appropriate to a pattern of state-wide regulation as much as does the regulation of liquor and that part of the regulation of motor vehicles which calls for state-wide rules such as rules for passing, rules pertaining to size of cars on the road, licensing, etc., as distinguished from speeds in towns, and those traffic regulations which the very local conditions require to be left to local authorities?

The attorneys for the petitioner have this in mind when they argue that Section 15-8-80 empowers the city to levy a license *fee* for the purpose of raising revenue only when it is coupled with regulation. I suppore then it would need to be further argued that the fee must not be more than approximately or reasonably sufficient to pay for the cost of regulation. It should be here noted that the attorneys for petitioner are not very explicit in their contention that the legislature did not intend to give by Section 15-8-80 the power to tax alone but only to tax *and* regulate. They do not say how much tax and how much regulation. I have supplied for them this missing link in their argument, to-wit, that the power to tax or to raise revenue was only incidental to regulation and hence if they are to be coupled together as a composite power rather than two powers, it must be on the theory that the taxing part of the power is incidental to the regulatory power and can only be used to the extent of paying for the regulation although exactness is not required. See *State* v. *Nelson,* 36 Idaho 713, 213 P. 358. The difficulty with this, as Mr. Justice Latimer stated in his opinion in the case at bar [215 P. 2d 618], is that the power to *raise revenue* by levying and collecting a license fee or tax on any business within the limits of the city is explicit and given in unequivocal terms. The additional phrase reading "and regulate the same by ordinance * * *." seems to be tacked on but in such a

way as not to make the foregoing power to raise revenue incidental to it but rather as a separate power to regulate.

If the constitution prohibits the legislature from delegating the cities the power to raise revenue by license taxes, it did it in a most peculiar and roundabout way—denial by implication and a far-fetched implication at that when a direct prohibition would have been clear. It would have been simple to say "cities and towns shall not have power to levy excise taxes" or words of equivalent import, or the legislature shall not have power to delegate to cities the power to levy excise taxes.

Since cities and towns have no powers except those granted expressly by the legislature or necessarily implied such municipalities would be restricted to ad valorem taxes alone and in these days when the cost of city government along with all other costs has risen greatly this would seem to be an unfortunte restriction. But the short and simple disposition of the argument is that no prohibition by implication or otherwise on the powers of the legislature to grant cities and towns the power to levy excise taxes can be read into the constitution. This disposes peremptorily of the argument of amicus curiae.