## PROVO CITY v. PROVO MEAT & PACKING CO.

No. 3016.   Decided May 5, 1917.   (165 Pac. 477.)

1. LICENSES—"LICENSE TAX"—"OCCUPATION TAX." A license tax is based on the police power of the state to regulate or prohibit a particular business, and not to raise revenue, while an occupation tax is primarily intended to raise revenue. (Page 531.)

2. LICENSES—"BUTCHER." In Comp. Laws 1907, Sec. 206x86 (Laws 1915, c. 100), empowering cities to license, tax, and regulate the business conducted by merchants, butchers, etc., the word "butcher" includes the occupation of a retail meat dealer. (Page 532.)

3. LICENSES—REGULATION OF BUTCHERS. Under Comp. Laws 1907, Sec. 206x43 (Laws 1915, c. 100), empowering cities to provide for the place and manner of sale of meats, the city has power to impose a license tax upon retail meat dealers. (Page 533.)

4. LICENSES—REGULATION OF BUTCHERS. Where power is conferred to regulate a particular business or calling, the power to license is included within the power to regulate. (Page 533.)

5. LICENSES—DOUBLE TAXATION. Under Comp. Laws 1907, Sec. 206, as to regulation and taxation of merchants, it is within

the power of a city to impose a general merchant's license tax upon one who is engaged in a general merchandising business, including the sale of meats, and further to impose a license tax upon his business of selling meat. (Page 534.)

Appeal from District Court, Fourth District; Hon. *A. B. Morgan,* Judge.

The Provo Meat & Packing Company was convicted of selling fresh meat without a license, and it appeals.

AFFIRMED.

*Jacob Evans* for appellant.

*Jacob Coleman* and *J. B. Tucker,* for respondent.

FRICK, C. J.

The defendant, a corporation, was charged with carrying on "the business of selling fresh meat at retail and wholesale" in the City of Provo "without having first taken out and procured the municipal permit and license" required by the ordinance of said city. The defendant was convicted by the city justice of the peace. It appealed to the district court of Utah County where, upon the stipulation of facts hereinafter set forth, it was again convicted, and now presents the record on appeal to this court.

The stipulated facts, omitting the formal parts, in substance, are:

That the City of Provo had theretofore duly passed two ordinances both of which were in force when the action was commenced, copies of which are attached to the stipulation of facts and will be hereinafter referred to; "that the defendant, on the 12th day of April, 1915, and for a long time prior thereto, was engaged in and carrying on business on Academy avenue, a public street of said Provo City; that in conducting said business, the said defendant carried for sale and sold a general stock of merchandising, including fresh meats at retail and wholesale, fish, green groceries, fruits, vegetables, canned goods, cheese, bread, butter, eggs, soda water, and other articles of food, and in connection therewith and as a

part thereof said defendant carried for sale and sold hardware and other articles of general household usefulness; that said business was carried on as one general business, in one building, with only one front entrance, and under one general management; that the money derived from the sale of the various articles hereinbefore mentioned was deposited in one general account to the credit of the said defendant, and the said business, although different articles of merchandise were sold, was carried on and conducted as one general business, but said defendant does not slaughter within said city; that the said defendant before carrying on said business, to wit, on March 3, 1915, as aforesaid, procured from the said plaintiff a general merchant's license for the year 1915 under the provisions of that certain ordinance of said Provo City a copy of which is hereto attached and marked 'Exhibit A,' which said license was in full force and effect on the said 12th day of April, A. D. 1915; that said business was being carried on and conducted in the manner aforesaid by the said defendant on the said 12th day of April, 1915, without first procuring a license from said Provo City to sell fresh meat at retail and wholesale as provided in that certain ordinance of Provo City passed on the 25th day of March, 1915, a copy of which is hereto attached and marked 'Exhibit B'; that the said defendant, on said 12th day of April, 1915, and at all times, was ready, able, and willing and offered to pay the plaintiff for a city license either under the provisions of Exhibit A or B, as said Provo City may elect, but said city refused to allow said defendant to carry on his said business in the manner hereinbefore stated, unless the said defendant would take out and pay a city license under the provisions of both of said ordinances, which the defendant refused to do.''

One of the ordinances provided for a tax on merchants who carried on business in Provo City. The stocks of merchandise were divided into 22 classes, ranging from $200, the lowest, to $500,000, and over, the highest. Those merchants who carried a stock of merchandise in excess of $500,000 constituted the first class, and were required to pay an annual tax of $400. Those who carried a stock in excess of $400,000 constituted the second class, and were required to pay an annual

tax of $350, and so on down to the merchant who carried a stock of $200, who was required to pay an annual tax of $10. The ordinance was, in all respects, like the one passed on by this court in the case of *Salt Lake City* v. *Christensen Co.*, 34 Utah 38, 95 Pac. 523, 17 L. R. A. (N. S.) 898. The ordinance imposing the foregoing tax contained the following provision:

''A merchant is one whose business is to buy and sell merchandise for gain or profit, but a merchant's license *shall not include a butcher's or meat market license, nor authorize the licensee to buy or sell meats, other than canned or cured.''* (Italics ours.)

The ordinance directly in question here, and under which appellant was convicted, so far as material, reads:

''It shall be unlawful for any person, firm or corporation to engage in the business of slaughtering, slaughtering and selling, or selling fresh meat at wholesale or retail within the corporate limits of Provo City, Utah, without first making application for and procuring a permit and license so to do, as herein provided.''

The ordinance provides for a license fee of from $15, the lowest, to $35, the highest. The appellant was required to pay a license fee or tax of $35.

We have referred to the foregoing ordinances for the reason that appellant's counsel insists that the City of Provo can require his client to pay a tax under only one of said ordinances, and, in view that it had required it to pay under the merchants' ordinance; the city cannot require payment under the meat dealers' ordinance. We shall refer to this objection again hereinafter.

Our Constitution (article 13, section 12) provides:

''Nothing in this Constitution shall be construed to prevent the Legislature from providing a stamp tax, or a tax based on income, occupation, licenses or franchises.''

As pointed out in the case of *Salt Lake City* v. *Christensen Co., supra*, the merchant's ordinance imposes a tax which is in the nature of an occupation tax rather than a license tax or license fee. The term ''occupation tax'' is, however, sometimes also applied to a license fee or license tax, and thus some confusion has at times arisen concerning

the meaning of the two terms.  Properly speaking, a license fee or a license tax comes within and is based upon the police power of the state to regulate or to prohibit a particular business.  Such a fee or tax is primarily intended to regulate a particular calling or business, and not to raise revenue, while an occupation tax is primarily intended to raise revenue by that method of taxation.  Our statute (Comp. Laws 1907, section 206x86), as amended by Laws Utah 1915, p. 168, confers power upon the cities of this state—"to raise revenue by levying and collecting a license fee or tax on any private corporation or business within the limits of the city and regulate the same by ordinance.  All such license fees and taxes shall be uniform in respect to the class upon which they are imposed."  In subdivision 38, section 206, *supra,* after providing for the licensing of various occupations, callings, and businesses, it is also provided that cities shall have the power "to license, tax, and regulate the business conducted by merchants, retailers, shop and storekeepers, butchers, druggists," etc., and subdivision 43 of the same section also confers power upon cities "to provide for the place and manner of sale of meats, poultry, fish, butter, cheese, lard, vegetables, and all other provisions, and regulate the selling of the same."

Appellant's counsel contends that neither one of the provisions to which reference has just been made confers power upon the City of Provo to impose the license fee or tax in question here.  He contends that his client does not **2** come within the term "butchers," and that such a power is not conferred in subdivision 44 aforesaid.  While it is true that, in some cases, it has been held that meat dealers are not included within the term "butcher" or "butchers" in a license statute, yet in other cases it is held that the term "butcher shop," includes meat dealers.  In *Wiest* v. *Luyendyk,* 73 Mich. 661, 41 N. W. 839, the Supreme Court of Michigan held that the terms "butcher shop" and "meat market" were commonly used as synonyms.  In 6 Cyc. 261, it is said that the word "butcher" "may, and often does, include the person who cuts up and sells the meat."  In 1 Stroud's Judicial Dictionary ([Eng.] 2d Ed.) 239, it is said:

"The business of a 'butcher' is carried on within the meaning of

Appeal from Fourth District.

a restrictive covenant if raw meat be sold on the premises though the animals be slaughtered elsewhere; and so the exposure of pork meat for sale is carrying on the business of 'pork butcher.'"

In *Green* v. *State*, 56 Ark. 386, 19 S. W. 1055, the term "butcher shop" was held to include a place where meats were sold, although the animals from which the meat was obtained were slaughtered elsewhere. While it is quite **3** true that the occupation of a butcher is mentioned in the statute we have quoted, yet we think that term also includes a dealer in meats. Such is, no doubt, the modern application of the term. But even though it be assumed that the appellant is not included within the term "butchers" in the statute we have quoted, yet its business is clearly in-' cluded within subdivision 43, section 206, *supra,* which we have quoted in full.

Counsel, however, insists that that subdivision only provides for the place and manner of sale of meats, etc. The contention is not tenable. The statute as clearly provides for the regulation as it does for the place and **4** manner of sale of meats. Where power is conferred to regulate a particular business or calling the power to license is included within the power to regulate. In 3 McQuillin, Mun. Corps., section 989, the author says:

"The prevailing rule is that *under power to regulate, the municipal corporation may license and charge a reasonable fee*, to cover the expense of regulation, especially concerning those occupations wherein regulation and supervision appear necessary or desirable for the public good. Thus, under power given the city to provide for the inspection and to regulate the sale of meats, power to tax for revenue the occupation of selling them is not given, but such fees and charges as are necessary to cover the cost of inspection and police supervision may be imposed."

Now, we have pointed out that, under our Constitution, both an occupation tax and a license fee or tax may be imposed. We have also shown that the Legislature of this state has clearly conferred both the power to impose an occupation tax for revenue purposes and to impose a license fee or tax for the purpose of regulation under the police power, and hence the objection of want of power must fail.

No lawyer, we think, will question the necessity of regulating the sale of fresh meats. Nor will any lawyer in this day and age deny that there is a clear distinction between the right to raise revenue by taxing occupations and the right to impose a license fee or so-called license tax for the purpose of "regulating" a particular business or calling. The courts, we think, all hold that where the purpose of the ordinance or statute is to regulate, under the police power, the amount of the license fee or tax must be reasonable, and may not exceed the reasonable cost of preparing and issuing the license and the reasonable expenses of inspection and supervision. In this case we are, however, relieved from the duty of passing upon the reasonableness of the fee or tax in question, since counsel, at the hearing, admitted that the amount imposed was not unreasonable. Counsel, however, further contends that, inasmuch as the appellant has paid the amount of the tax demanded from it under the merchant's ordinance, for that reason it cannot also be required to pay under the meat dealer's ordinance. In that connection it is argued that the city is merely attempting to split up appellant's business into distinct parts or elements and to tax each part separately. In support of the argument counsel cites and relies on what is said by the author in 3 McQuillin, Mun. Corps., section 1003, which reads as follows:

"A municipal corporation cannot, by ordinance, under the delegated general power to tax privileges, segregate the several elements of right that accrue to the citizen under *one taxable privilege*, as recognized, defined and declared by law, and tax each of such *elements* as a *separate* and *distinct* privilege of its own creation, as, for example, by *dividing several privileges into many and requiring separate licenses* to sell special articles which necessarily belong to one legal privilege, and which the law permits to be sold under one license. To express the rule in other words, power to impose a license tax upon a business does not authorize a division of the business into its constituent elements, parts, or incidents, and levy a separate tax on each or any element, part, or incident thereof."

In the case at bar appellant, in its general stock of merchandise, has, however, also included several articles which are usually recognized as falling within the power to regu-

late as a distinct right and quite apart from the right of imposing an occupation tax. Suppose the appellant concluded to add to its general stock of merchandise large or considerable quantities of explosives, such as gun or giant powder, or dynamite, together with other explosives, and that all of those had been included in the value of its stock of merchandise under the merchant's ordinance, could it, nevertheless, successfully contend that Provo City could not require it to pay a fee for a license, or permit, to deal in and sell such explosives? True, such explosives are inherently dangerous, but that fact does not affect the power to regulate, but merely the degree or extent of regulation. While explosives affect the public safety, meats, and especially fresh meats, all know, may seriously affect the public health. In this day and age, and especially in cities and towns, it is quite as necessary to regulate the one as the other. It is apparent, therefore, that to require a merchant to pay a license for the privilege of dealing in fresh meats in no way affects the city's right to impose an occupation tax upon his stock of merchandise, including his meats. The license fee is imposed to defray the cost and expenses of issuing the license and of inspection and general supervision. That is not double taxation in any sense. Neither is it dividing or splitting the business into separate parts or distinct elements. Moreover, a mere cursory reading of the cases cited by Mr. McQuillin in support of the text we have quoted, namely, *Re Sims,* 40 Fla. 432, 25 South. 280, *Canova* v. *Williams,* 41 Fla. 509, 27 South. 30, and *Southern Express Co.* v. *Rose Co.,* 124 Ga. 581, 53 S. E. 185, 5 L. R. A. (N. S.) 619, will at once disclose that the license fee in question here is clearly distinguishable from the license taxes which were sought to be enforced in those cases. The question, therefore, is not one of power to impose and enforce the tax in question, but it is one of policy, with regard to which this court has no power to speak.

The objections urged by appellant's counsel are therefore without merit, and the judgment should be affirmed, with costs to respondent. Such is the order.

McCARTY and CORFMAN, JJ., concur.