315 P.2d 859

**SALT LAKE CITY LINES, a corporation, Plaintiff and Appellant,**

v.

**SALT LAKE CITY, Defendant and Respondent.**

No. 8654.

Supreme Court of Utah.

Sept. 27, 1957.

Pugsley, Hayes & Rampton, Salt Lake City, for appellant.

Homer Holmgren, Salt Lake City, for respondent.

HENRIOD, Justice.

Appeal from a judgment in favor of defendant city in a declaratory judgment action where plaintiff urged the invalidity of an ordinance which exacted a 2% "license tax" on gross revenues produced from intracity passenger service. Affirmed with costs to defendant.

In 1944 plaintiff petitioned the city for approval of a transfer to itself of a mass transportation franchise and other property from its predecessor. An ordinance was enacted approving the transfer and as a condition to the operation of a comprehensive transportation system over city streets by means of electric trolley cars and coaches and motor buses, a "license tax" of .5% of gross revenues from intracity passenger service was imposed. The ordinance was to be effective until 1955. Plaintiff paid the license tax through 1947 and thereafter. In that year the company had converted completely to motor buses. In 1951, with four years remaining under the existing ordinance, plaintiff's officers orally agreed to an ordinance increasing the city's take to 2% of the gross revenues. The ordinance granted for 50 years a franchise to operate a mass transportation system by rail and coach trolleys, by motor bus, or by "any other system of mass transportation" deemed advisable by the company. It conditioned erection of company facilities on minimum interference with the use of city streets. It burdened the city not only with a 50 year grant, but the city was to furnish sand, cinders and the like, at city expense, for use by the company, during inclement weather. It permitted the company to attach signs to city property, and it specifically relieved the company of any and all other taxes or fees that the city otherwise might have exacted. Further, it required the company to file quarterly returns and pay the amount of the license tax, and provided that the city should have the right to examine the company's books for accuracy. Finally, it provided that the company file an acceptance of the ordinance within 30 days, which it has not done to date, otherwise the ordinance would be null and void.

Some time thereafter, in petitioning the State Public Service Commission for a rate increase, the company represented that it was bound to pay the tax and was granted a rate increase, at least partially because of that fact.

In 1956, plaintiff asked the city to eliminate the license tax. After a hearing, another ordinance was passed reducing the amount of the license tax by one-half for the year 1956 only,—a concession which was acknowledged gratefully by the company.

Throughout the entire history of this matter the company, without protest of any kind and without any claim that the ordinances were invalid, has assumed the burdens and accepted the benefits of all three. Now, for the first time, it urges that the 1951 ordinance is invalid, asserting that: 1) the company did not formally accept it within the required 30 days, 2) is not now estopped from asserting such invalidity by having complied with the terms of the ordinance, 3) that the ordinance is offensive to Title 10–8–80, Utah Code Annotated 1953 because of lack of uniformity of the tax as applied to the class upon which it is imposed, and 4) that the city was without authority either to grant or withhold the privilege of conducting plaintiff's business on city streets.

■ All of the contentions mentioned seem to be vulnerable to the general proposition that one accepting the benefits of legislation, ordinarily is speechless in denouncing its validity,[1] even on constitutional grounds. However, irrespective of the obvious equity of the rule mentioned and the authorities which support it, we feel constrained to answer plaintiff's points which we do seriatim.

■■ As to 1), it must be conceded that generally where an acceptance is required under an ordinance granting a franchise, effectively it may and can be waived or satisfied by conduct.[2] If ever there were a case where such rule's significance is apparent it would seem to be this one, where, for at least six years plaintiff unprotestingly and unequivocally has honored all the terms of the ordinance save that of filing a formal acceptance. It is no answer to say that one may not be forced to accept an unwanted privilege. Such truism is destructible by conduct which is not consonant with non-acceptance, as here. To say that, under such circumstances a petitioner, living within the legislation's mansion for many years, need pay no board simply because he has not signed a meal ticket, would be to flout reason and strap the law in a straitjacket laced with unreasonable technicality. The authorities do not approve

1. Fahey v. Mallonee, 332 U.S. 245, 67 S. Ct. 1552, 1557, 91 L.Ed. 2030, in which Mr. Justice Brandeis is quoted by Mr. Justice Jackson as having said in another case [Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688] that "The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits."

2. McQuillin Municipal Corporations, 3rd Ed., Sec. 34.43; City R. Co. v. Citizens' St. R. Co., 166 U.S. 557, 17 S.Ct. 653, 41 L.Ed. 1114.

such a result, and we are not constrained to depart therefrom by concluding that the ordinance here is impotent by virtue of mere failure to sign an acceptance,— which, from the whole record, reasonably could be said to have been an oversight. We believe plaintiff has accepted the ordinance by conduct.

■ As to 2) the contention that plaintiff is not estopped from urging the ordinance's invalidity because the city did not act to its detriment can be met, with the fact that as a consequence of the increase in fares resulting at least partially from the representation that the company was duty bound to pay the license tax, the citizens of Salt Lake, who *are* the city, have been required to their detriment to pay higher fares, certainly satisfying the legal detriment aspect of an estoppel.

■ As to 3) the contention that the tax was not uniform with respect to the class upon which it was imposed because it was not applicable equally to sight-seeing buses, taxicabs, intercity buses and the like, we are convinced that mass transportation by motor bus for fixed fares over fixed routes on a fixed schedule, is so different from the other systems mentioned as to conclude that it reasonably does not fall within a common classification, such as to require uniformity of franchise conditions for all those mentioned. A portion of the opinion in Allen v. City of Bellingham, 95 Wash. 12, 163 P. 18, presents an interesting analysis of the practical differences between several types of passenger conveyances not requiring uniform treatment, to which we make reference in further explanation of our conclusion.

■■ Lastly, we believe the contention 4) that the city has no authority to burden plaintiff with a conditional franchise, to be without merit. It is based on the assumption that the franchise in question was solely to operate a transportation system by motor bus. This is not so, even if, since 1947, the plaintiff has deemed it advisable to operate only by motor bus. The ordinance gives the company a 50-year right to use city streets to operate electric vehicles of two types, to operate by motor bus or to operate under any other system it might deem advisable. The inclusion of motor bus transportation is but part of the franchise, not all of it, and even assuming that such inclusion be deemed surplusage, and without determining the extent of city authority to regulate such transportation, the company nonetheless could exercise the other privileges granted therein. Nonuse of one part of a multiprivileged franchise does not destroy the others.

McDONOUGH, C. J., and CROCKETT, WADE and WORTHEN, JJ., concur.