**CONSOLIDATION COAL COMPANY, et al., Plaintiffs and Respondents,**

v.

**EMERY COUNTY, et al., Defendants and Appellants.**

**No. 18554.**

Supreme Court of Utah.

June 24, 1985.

Scott N. Johansen, Co. Atty., Castle Dale, Bill Thomas Peters, Sp. Co. Atty., Salt Lake City, for defendants and appellants.

John F. Waldo, James B. Lee, Kent W. Winterholler, Salt Lake City, James T. Jensen, Price, for plaintiffs and respondents.

DURHAM, Justice:

Plaintiffs sued in the trial court for declaratory judgment, injunctive relief, and a refund of fees paid, challenging the validity of portions of the Emery County Business License Ordinance. The district court declared the challenged portions of the ordinance unconstitutional and beyond Emery County's statutory authority, enjoined any further efforts to enforce the provisions in question, and ordered Emery County to refund money paid by Consolidation Coal Company pursuant to the ordinance. Emery County and the individual defendants appeal. Three issues are raised: (1) whether the "additional fee" provision of the Emery County Business License Ordinance is in excess of the licensing authority granted to counties under U.C.A., 1953, § 17-5-27 (1973); (2) whether the additional fee provision denies equal protection to the plaintiffs; and (3) whether the criteria for exemption from the additional fee provision are unconstitutionally vague and therefore violate plaintiffs' due process rights. We affirm on the statutory authority question.

The Emery County Business License Ordinance, No. 7-9-80A, requires all businesses located in the unincorporated area of Emery County (except those exempted by the Emery County Commission) to obtain a business license and to pay an initial fee of $25. Section 7-3 of the ordinance requires all businesses subject to the ordinance to pay an additional fee of one-half of one percent of the fair market value of all goods and services sold or originating within Emery County to the extent such

value exceeds $150,000 per year. It is this latter section that is challenged by plaintiffs.

The trial court made the following findings of fact:

1. The county had adopted no regulations specifically affecting those businesses subject to the additional fee provision.

2. The money to be generated by the additional fee provision (over $800,000) was to go into Emery County's general fund to be expended for general county purposes.

3. None of the revenue from the additional fees was allocated for enforcing the ordinance.

4. The revenue to be raised from the additional fee bore no relationship to the cost of enforcing the ordinance.

5. The additional fee provision was intended as a general revenue measure and has little, if any, regulatory purpose or effect.

■ The power of a county or city to license businesses and to impose a fee for licenses is generally of two types. A city or county may impose a license primarily as a means of regulating businesses, as an exercise of its police powers, or it may license primarily to raise revenue, as an exercise of its taxing power. 9 E. McQuillin, *The Law of Municipal Corporations* § 26.15, at 29 (3d ed. rev. 1978). A fee imposed under a municipality's police power is properly called a license tax or license fee. *Provo City v. Provo Meat & Packing Co.,* 49 Utah 528, 532, 165 P. 477, 479 (1917). Such a fee "must bear some reasonable relationship to the cost of regulating the business so licensed." *Weber Basin Home Builders Association v. Roy City,* 26 Utah 2d 215, 217, 487 P.2d 866, 867 (1971). A fee imposed under a municipality's taxing power is properly called an "occupation tax." *Provo Meat & Packing Co.,* 49 Utah at 532, 165 P. at 479. Whether a given licensing ordinance is an exercise of the municipality's police power or its taxing power, the state must have expressly authorized the exercise. "In other words, a municipal corporation has no in-

herent licensing power." 9 E. McQuillin, *supra,* § 26.22, at 41.

Consolidation Coal Company and the other plaintiffs in this case claim, and the trial court found, that the additional fee provision of the Emery County Business License Ordinance is a general revenue measure and therefore constitutes an exercise of the taxing power. The question, then, is whether the Utah Legislature has authorized counties to use their licensing power to tax.

Under Utah law, "[a] county has power ... [t]o levy and collect such taxes for purposes under its exclusive jurisdiction as are authorized by law." U.C.A., 1953, § 17-4-3(5) (1973). Section 17-5-27 authorizes the county commissioners to

license for *purpose of regulation and revenue* all and every kind of business not prohibited by law ... carried on in the county outside the limits of incorporated cities; they may [also] fix the rates of license tax upon the same, and provide for the collection thereof by suit or otherwise....

(Emphasis added.) The section goes on to say that the county commissioners "may license, tax, regulate, suppress and prohibit" certain enumerated activities and businesses of the type generally deemed proper subjects of regulation.

In contrast to the statutory grant to counties is the statutory grant of licensing authority to cities. City councils "may raise revenue by levying and collecting a license fee or tax on any business within the limits of the city, and regulate the same by ordinance...." U.C.A., 1953, § 10-8-80 (1973). Cities are also authorized to "license, tax and regulate" certain enumerated businesses. U.C.A., 1953, § 10-8-39 (1973).

The Utah Supreme Court first considered these licensing statutes in *Ogden City v. Crossman,* 17 Utah 66, 53 P. 985 (1898). For revenue purposes, the city of Ogden had imposed an annual five-dollar license fee on each rented telephone maintained within the city. The Court held that the

predecessor of section 10–8–80 authorized cities to raise revenue by imposing a license tax. The city was "not limited to the mere expense of the regulation, but ... may impose a reasonable license tax for the purpose of obtaining revenue necessary to meet the general expenses of [the] municipality." *Id.* at 78, 53 P. at 989. The only limitation on the city's power to impose a license tax was that the tax could not be "so excessive as to prohibit or destroy the occupation or business upon which it is imposed." *Id.*

Later cases reaffirmed the idea that *cities* could license solely to raise revenue. *See Weber Basin Home Builders Association v. Roy City*, 26 Utah 215, 487 P.2d 866 (1971); *Davis v. Ogden City*, 117 Utah 315, 215 P.2d 616 (1950); *Provo City v. Provo Meat & Packing Co.*, 49 Utah 528, 165 P. 477 (1917). In *Davis v. Ogden City*, the Court discussed the prior cases and the relevant statutes and concluded that the predecessor of section 10–8–39, which authorized cities to "license, tax and regulate" enumerated businesses, was meant primarily as a delegation of power to cities to license for regulation, whereas the predecessor of section 10–8–80, the general licensing provision, "was to be considered as primarily a delegation of the taxing power for revenue purposes, thus allowing cities to impose an occupation tax on those businesses which did not require close supervision and regulation." 117 Utah at 328, 215 P.2d at 622. The two provisions were not interdependent, so a city could impose a license fee under section 10–8–80 without also providing for regulation of the licensed businesses.

In *Cache County v. Jensen*, 21 Utah 207, 61 P. 303 (1900), the Court had to decide whether counties possessed the same licensing authority as cities. Cache County had passed an ordinance requiring a license of everyone who raised or herded sheep within the county. The cost of the license varied according to the number of sheep raised. There was no showing that the ordinance was necessary as a regulatory measure. *Id.* at 224, 61 P. at 307. The Court noted, "[T]he legislature has plenary

power to authorize a board of county commissioners to impose a license upon occupation for revenue only, even in the absence of any regulation, police or otherwise, of the business." *Id.* at 217, 61 P. at 305. The material question was whether the legislature had conferred such power on counties. The Court concluded that it had not.

The Court first discussed *Ogden City v. Crossman*. It then noted that, even if the same principles applied to city and county ordinances, the statutory grant of power to counties differed from that to cities. Cities are authorized to " '*raise revenues* by levying and collecting a license fee or tax,' " *Cache County v. Jensen*, 21 Utah at 216, 61 P. at 305 (quoting Compiled Laws of Utah § 1755(89) (1888) (current version at U.C.A., 1953, § 10–8–80 (1973)) (emphasis added), whereas counties are only authorized to " 'license for purpose of *regulation and revenue*,' " *id.* at 217, 61 P. at 305 (quoting Revised Statutes of Utah § 511(11) (1898) (current version at U.C.A., 1953, § 17–5–27 (1973)) (emphasis added). The Court noted that the word "license" implies regulation, and the imposition of a license generally falls within the police power. "[A] right to license a business or occupation does not imply a right to exact a tax merely for revenue, and, where the object is revenue, the power to license for that purpose must be conferred in unequivocal terms." *Id.* at 218, 61 P. at 305. The Court did not find such an unequivocal grant of power in the predecessor of section 17–5–27, which was identical to that section in all relevant respects. Applying the rule that taxing statutes are to be construed strictly against the taxing authority and in favor of the public, *id.* at 221, 61 P. at 306, the Court concluded that the predecessor section did not authorize counties "to impose a license for revenue only, without regard to regulation...." *Id.* at 222, 61 P. at 307. If a licensing ordinance is meant for regulation and imposes a fee designed to defray the costs of regulation,

it is no objection to the license that incidentally a revenue is also obtained, if the

license tax, under the circumstances, be not wholly unreasonable, and be uniform and equal as to all subjects engaged in the same business. [But] the legislature intended "regulation" to be a principal element of every license, under the statute....

*Id.* at 221, 61 P. at 306.

The Court did not consider again the extent of the authority conferred on counties until *State v. Taylor*, Utah, 541 P.2d 1124 (1975). *State v. Taylor* involved a Salt Lake County ordinance that levied a license fee on every business within the county. The base fee was $30 per place of business, plus an additional $3 for each employee over one, up to a maximum of $780. The defendant, who operated a business in his home, refused to pay the license fee and was convicted of operating a business without a license. He defended on the ground that the ordinance was unconstitutional in that it denied him equal protection. He did not challenge the county's authority to pass such an ordinance even though, as the Court noted in its opinion, "[b]y its express terms, the ordinance is a revenue measure." *Id.* at 1125.

In disposing of the constitutional issues, the Court noted in passing: "The county derives its power to enact an occupation tax ordinance from § 17–5–27, U.C.A., 1953, which confers authority to license, for the purpose of revenue, all and every kind of business, where such action is not prohibited by law." *State v. Taylor*, 541 P.2d at 1126. The opinion cites no authority for this construction of section 17–5–27. The Court did not mention, and therefore appears not to have considered, *Cache County v. Jensen*, 21 Utah 207, 61 P. 303, which had held that the predecessor of section 17–5–27 (which is identical to that section in every relevant respect) did not authorize a county to levy an occupation tax, but required regulation as a necessary part of every county licensing ordinance. The Court's paraphrase of section 17–5–27 —"for the purpose of revenue"—omits the rest of that phrase. The section only authorizes licensing "for purpose of *regulation* and revenue."* (Emphasis added.) Of course, this language from *State v. Taylor* was dicta, in that it was not essential to the resolution of the issue in the case, which was the constitutionality of the Salt Lake County ordinance. But if the county lacked authority to pass the ordinance in the first place, the ordinance would have been invalid whether or not it violated equal protection, and the Court would never have had to reach the constitutional issue. Thus, the *Taylor* court's construction of section 17–5–27—which is at odds with *Cache County v. Jensen*—cannot be ignored entirely in our analysis.

We are aware of only two other jurisdictions that have construed statutory language similar to that in section 17–5–27: California and Arizona. In *Ex parte Mirande*, 73 Cal. 365, 14 P. 888 (1887), the California Supreme Court considered a county ordinance similar to that considered in *Cache County v. Jensen*. The ordinance required a license to raise sheep and imposed a graduated license fee that increased with the number of sheep owned. The California County Government Act, quoted in *Mirande*, 73 Cal. at 372, 14 P. at 891, authorized county supervisors "[t]o license, for purposes of regulation and revenue, all and every kind of business not prohibited by law, and transacted or carried on in such county...." The California court said: "We do not deem it necessary to discuss the question as to whether the license in question is imposed for revenue purposes or for the purposes of regulation, for the reason that the board [of county supervisors] possessed authority to impose it for either or for both." *Id.* at 374–75, 14 P. at 892. *Mirande* was relied upon by the county in *Cache County v. Jensen*. The Utah Supreme Court, however, said that even if the California decisions cited were on point, the Court "should not be inclined to follow" them. 21 Utah at 228, 61 P. at 309. Interestingly, shortly after the *Mirande* decision the California Legislature revised the statute to read: "The boards of [county] supervisors ... may in the exercise of their police powers, and for the purpose of regulation, ... and not other-

wise, license any kind of business not prohibited by law...." (Currently codified at Cal.Bus. & Prof.Code § 16100 (West 1964).)

The Arizona Supreme Court considered language similar to that of section 17–5–27 in *City of Phoenix v. Arizona Sash, Door & Glass Co.*, 80 Ariz. 100, 293 P.2d 438, *modified*, 80 Ariz. 239, 295 P.2d 854 (1956). (In modifying the decision, the court left intact its holding that Phoenix could license solely for revenue.) The city of Phoenix had assessed an occupation or "privilege tax" on all persons doing business within the city. The tax was imposed on the gross business done or gross proceeds of the business. The tax rate varied depending on the type of business. 80 Ariz. at 101–02, 293 P.2d at 439. The city charter authorized the city to "license, for the purpose of regulation and revenue, all and every kind of business ... not prohibited by law to be transacted or carried on in the city; [and] to fix the rates of licenses upon the same...." *Id.* at 103, 293 P.2d at 440. The plaintiff contended that that provision did not authorize the ordinance, which was admittedly a revenue measure. The Arizona Supreme Court disagreed. It held that the charter provision empowered the city to exact a tax for the privilege of doing business within the city. It said:

> Inasmuch as the term "revenue" is synonymous with taxes, it is obvious that the framers of the city charter in using the term, "to license for the purpose of regulation and revenue * * * and to fix the rates of licenses upon the same * *," intended to vest the commission with power to license any business, profession, trade, etc., in the city *either* for the purpose of regulation *or* for the purpose of revenue.

*Id.* at 103–04, 293 P.2d at 440 (emphasis added). In support of its decision the court reasoned that no distinction could be made between the power of a city to levy property taxes (which power it admittedly had) and the power to levy an occupation tax "for the reason that the latter may be as essential to the economic vitality of the city as the former." *Id.* at 104, 293 P.2d at 440.

The Arizona court also gave weight to the charter provision that allowed the city "to fix the rates of licenses." *Id.* In doing so, it relied on its earlier decision in *McCarthy v. City of Tucson*, 26 Ariz. 311, 225 P. 329 (1924). In *McCarthy*, the issue was whether Tucson's charter authorized a license tax for revenue. The charter empowered the city "to license and regulate" all businesses and "to fix the rates of license tax" on them. The court conceded that the "license and regulate" language alone would probably not justify an occupation tax, but found authorization for such a tax in the provision allowing the city to "fix the rates of license tax." The court said:

> The right to tax is a condition precedent to the right to fix the rate of taxation, whether it be upon property or as here upon an occupation.... The words "license and regulate" confer all the authority necessary for regulation purposes, ... and, therefore, ... [the legislature's] intention in using the words "to fix the rates of license tax" was to authorize the imposition of . a tax upon the privilege of following [an] occupation for the purpose of raising revenue and not for the purpose of ... regulating it.

*Id.* at 316, 225 P. at 331.

Thus, there is authority in support of both constructions of section 17–5–27 urged upon us here. The implications of *State v. Taylor*, 541 P.2d 1124, and the California and Arizona decisions discussed above suggest that the statute might be read to permit a county to license solely for revenue purposes. But in *Cache County v. Jensen*, 21 Utah 207, 61 P. 303, the only case in which this Court has faced squarely the precise issue here, the California position was specifically rejected, and the Court held that counties could not license solely for revenue. The meaning of the statute set forth in that decision, which was not specifically overruled (or even treated) by the troublesome dicta in *State v. Taylor*, has otherwise been good law since 1900. The defendants address a number of policy arguments to this Court on appeal, urging political and economic ra-

tionales for changing the *Cache County v. Jensen* reading of section 17–5–27. We believe that such arguments would be more properly addressed to the Legislature, which is the source of taxing powers possessed by the counties. We note, by way of illustrating the appropriateness of the legislative, as opposed to the judicial, forum for a change in long-settled law, that if it is necessary or desirable for counties to raise revenues through licensing taxes, some limits should exist to prevent inequitable distributions of the tax burden among a few businesses. The Legislature is better equipped to devise such limitations and to accommodate the competing interests of counties and local businesses than are the courts.

Therefore, we affirm the holding in *Cache County v. Jensen* and hold that section 17–5–27 does not permit the counties to raise revenue through licensing, except insofar as such revenue is necessary to (and therefore proportionate to the cost of) regulation cf the licensed entities. We also explicitly disavow the implications of the dicta in *State v. Taylor* to the contrary. The trial court found as matters of fact that the revenue to be raised from the additional fee provision in this case bore no relationship to the cost of enforcing the ordinance and that the provision was intended as a general revenue measure with little, if any, regulatory purpose or effect. Our review of the record demonstrates that these findings are amply supported by the evidence, and we will not overturn them. Having based our holding on the statutory authority question, we do not reach the constitutional issues raised below. The decision of the trial court is affirmed.

HALL, C.J., and HOWE, J., concur.

ZIMMERMAN, J., does not participate herein.

STEWART, Justice (dissenting):

I dissent for the reasons stated in my dissenting opinion filed in *Mountain States Telephone and Telegraph Co. v. Salt Lake County,* Utah, 702 P.2d 113 (1985).